UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DEANGELO LORENZO LEWIS,<br><br>*Defendant*. | Criminal Action No. 24-144 (LLA) |

## MEMORANDUM OPINION AND ORDER

Defendant Deangelo Lorenzo Lewis was charged in a three-count indictment and his trial is scheduled to begin October 21, 2024. Mr. Lewis moves to dismiss Count II, unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1), arguing that the statute is unconstitutional on its face and as applied to him under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). ECF No. 25; *see* Fed. R. Crim. P. 12(b)(3)(B)(v) (providing that a defendant may seek dismissal for "failure to state an offense"). The matter is fully briefed, ECF Nos. 25, 30, 33, and the court heard oral argument on July 23, 2024. For the following reasons, the court will deny Mr. Lewis's motion.

The Second Amendment recognizes "an individual right to keep and bear arms for self-defense." *Bruen*, 597 U.S. at 17. "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 21 (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). In *Bruen*, the Supreme Court clarified the scope of conduct that may be regulated consistent with the Second Amendment, explaining that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. A regulation passes constitutional muster, however, if the government

demonstrates that the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id*.

*Bruen* put an end to a two-step framework that federal courts had applied in the years following *Heller* and *McDonald v. Chicago*, 561 U.S. 742 (2010). Under that framework, if historical evidence established that the challenged law regulated conduct outside the original scope of the Second Amendment right, courts held that the conduct was not protected. *Bruen*, 597 U.S. at 18. But if the historical evidence was unclear or suggested that the regulation was not categorically unprotected, the courts would weigh a law's burden against the benefit it offered. *Id.* at 18-19. The *Bruen* Court rejected this framework as "one step too many." *Id.* at 19. The Court clarified that *Heller* and *McDonald*'s methodology centered on constitutional text and history and "did not invoke any means-end test such as strict or intermediate scrutiny" or "interest-balancing inquiry." *Id.* at 22. Thus, the Court explained, that "[t]he test we set forth in *Heller* and apply today requires courts to [only] assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26.

Since *Bruen*, several judges in this district have held that Section 922(g)(1) is consistent with our Nation's history and tradition. *See, e.g.*, *United States v. Richardson*, No. 23-CR-200-1, 2024 WL 402948, at *3 n.2 (D.D.C. Feb. 2, 2024) (collecting cases); *Baisden v. Garland*, No. 19-CV-3105, 2023 WL 7695744, at *5 (D.D.C. Nov. 15, 2023). This court agrees. In *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir 2019), a pre-*Bruen* case, examination of the Nation's historical tradition of firearm regulation led the U.S. Court of Appeals for the D.C. Circuit to reject the argument that previously convicted felons have a right to bear arms. *Id.* at 158-160. The Court "look[ed] to the public understanding of the right at [the time the Second Amendment was ratified] to determine if a convicted felon would fall outside the scope of its protection," and, after

determining that capital punishment for felonies was "ubiquit[ous]" and the "standard penalty for all serious crimes," reasoned that it was "difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* at 158.  After examining other founding era proposals and policies, the Court further concluded that "the public [at that time] understood that the right to bear arms could exclude at least some nonviolent persons." *Id.* at 159.

Mr. Lewis argues *Medina* has been overruled or abrogated by *Bruen*. ECF No. 33-1, at 3-5. Not so.  While the *Medina* Court set forth the now-rejected two-step framework as its legal standard, it did not engage in the "means-end scrutiny" or "interest-balancing inquiry" step that the *Bruen* Court discarded.  *See* 913 F.3d at 161 ("Because the claim fails at the first step . . . , we need not reach the second step.")  The *Bruen* Court specified that the two-step framework was "one step too many," but it held that the first step was "broadly consistent with *Heller*" and emphasized that the test it was applying—requiring "courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding"—was the same "test that the Court set forth in *Heller*." 142 U.S. at 19, 26.  The *Medina* Court solely examined "tradition and history" to establish that a "felony conviction removes one from the scope of the Second Amendment," and it looked to *Heller* for guidance in doing so.  913 F.3d. at 158, 160.  As the court explained in *Richardson*, "refinement of the historical method applied in *Medina* does not 'clearly dictate a departure' from *Medina* such that this Court could conclude it had been overruled."  2024 WL 402948, at *4 (quoting *Bahlul v. United States*, 77 F.4th 918 (D.C. Cir. 2023)).  This court thus concludes that it is bound by *Medina* and, even if it were not, it would

independently conclude that a law disarming felons comports with the Nation's history and tradition.[1]

The Supreme Court's decision last month in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), only supports the court's conclusion that Section 922(g)(1) is consistent with the Second Amendment. In *Rahimi*, the Court upheld 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by persons subject to domestic violence restraining orders, holding that it fits "comfortably" within the Nation's tradition of "preventing individuals who threaten physical harm to others from misusing firearms." 144 S. Ct. at 1896-97. The *Rahimi* Court explained that "some courts [had] misunderstood [the *Bruen*] methodology," *id.* at 1897, and that "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition," such that a challenged regulation need not have a "historical twin" or be a "dead ringer" for a historical precursor, *id.* at 1898 (emphasis added).

While *Rahimi* addressed Section 922(g)(8) and not Section 922(g)(1), the Court affirmed that the Nation's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." 144 S. Ct. at 1902; *see id.* at 1901 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."). That analysis applies with equal force to those previously convicted of a felony. Furthermore, in the weeks following the *Rahimi* decision, the Supreme Court vacated the opinion in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc)—the case heavily relied upon

---

[1] As other courts in this district have noted, the *Bruen* opinion repeatedly refers to the rights of law-abiding citizens and "did not question the constitutionality of the felon-in-possession law." *Richardson*, 2024 WL 402948, at *3. "Indeed, the *Bruen* majority used the phrase 'law-abiding' to describe 'the people' whose rights the Second Amendment guarantees no fewer than fourteen times." *United States v. Shaw*, No. 22-CR-1, 2023 WL 3619416, at *6 (D.D.C. May 24, 2023).

by Mr. Lewis in which the court recognized an as-applied constitutional challenge to Section 922(g)(1)—and remanded the case for further consideration in light of *Rahimi*, *see Garland v. Range*, No. 23-374, 2024 WL 3259661 (July 2, 2024).  Thus, *Rahimi* further supports the court's conclusion that Section 922(g)(1) is constitutional both facially and as applied to Mr. Lewis.

For the forgoing reasons, the court **DENIES** Mr. Lewis's motion to dismiss Count Two of the indictment.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: July 29, 2024